2000 ND 64

**Ismail Mohamed ABDI, Petitioner and Appellant,**

v.

**STATE of North Dakota, Respondent and Appellee,**

No. 990239.

Supreme Court of North Dakota.

March 30, 2000.

Shane C. Perry (argued), Perry, Perry & Perry, Minneapolis, MN, and Bruce D. Quick and Monte L. Rogneby (appearance), Vogel, Weir, Bye, Hunke & McCormick, Ltd., Fargo, ND , for petitioner and appellant.

Birch P. Burdick, State's Attorney, Fargo, ND, for respondent and appellee. Argued by John Gross, third year law student.

VANDE WALLE, Chief Justice.

[¶ 1] Ismail M. Abdi appealed from a judgment denying his application for post-conviction relief from a conviction entered upon his guilty plea to an assault charge. We hold the post-conviction court did not abuse its discretion in denying Abdi's request to withdraw his guilty plea and, on this record, Abdi has not shown he received ineffective assistance of counsel. We affirm.

I

[¶ 2] In August 1998, Abdi, a Somalian native who had been admitted into the United States in 1993, was charged with two counts of aggravated assault under N.D.C.C. § 12.1–17–02 for allegedly stabbing two victims.

[¶ 3] At Abdi's initial appearance on August 7, 1998, the trial court advised a group of defendants:

First of all, you have the right to be present at each and every stage of the proceedings.

You have the right to have an attorney present to represent you at each and every stage of the proceedings. If you cannot afford one and the Court decides that you qualify, then an attorney can be appointed to represent you at public expense.

You have the right to remain silent, except to enter a plea of guilty or not guilty. If you do remain silent, I will enter a not guilty plea for you.

You have the right to a jury trial upon the entry of a not guilty plea. And you may, if the State's Attorney's office agrees and the judge agrees, waive your right to a jury trial and have it tried before the judge without a jury. If you are tried before a jury, though, a unanimous verdict of guilt is required before the jury can convict you if they do convict you.

You have the right to confrontation with the witnesses who would take the stand and testify against you. And by that I mean you have the right to cross-examine the witnesses who take the stand and testify against you.

You also have the right to subpoena power of the State of North Dakota to compel witnesses to come forward and testify in your own defense.

You have the right to reasonable delay within which to prepare a defense.

You have the right not to testify at your own trial. And by that I mean you can have a trial without ever taking that witness stand. And no one is to comment upon that to anyone at the trial.

You have the right to presumption of innocence, and you are presumed inno-

cent unless and until the State can prove you guilty beyond a reasonable doubt as to each and every material allegation alleged against you.

You have the right to have a public trial, and you have the right to have a speedy trial.

And you have the right to be admitted to reasonable bail.

. . . .

If you're not a citizen of the United States and you are convicted of a crime, you may be deported to another country.

After the group explanation, Abdi was individually informed the aggravated assault charges against him were class C felonies, each carrying a maximum possible penalty of five years in jail, a $5,000 fine, or both, and a minimum mandatory penalty of two years imprisonment without parole. Abdi informed the court he understood the charges, and requested court-appointed counsel and an interpreter.

[¶ 4] On August 27, 1998, the date set for his preliminary hearing, Abdi appeared with court-appointed counsel and an interpreter and waived a preliminary hearing. Abdi was read the Information charging him with two counts of aggravated assault and was advised of the maximum and mandatory minimum penalties for both charges. Abdi informed the court he understood the charges and penalties, and pled not guilty.

[¶ 5] On October 7, 1998, Abdi appeared at a hearing with counsel and an interpreter. Counsel informed the court he had been "talking" with the prosecution and anticipated an amendment to the information. Counsel requested the matter be set for a change of plea. On October 9, the State filed an amended information, reducing the charges against Abdi from two counts of aggravated assault to one count of class-A-misdemeanor assault under N.D.C.C. § 12.1–17–01.1.

[¶ 6] On November 9, 1998, Abdi appeared with an interpreter and counsel at a change-of-plea hearing. The following colloquy occurred:

THE COURT: Okay. Then I'm going to ask you some questions and have you answer them out loud.

Can you understand what your interpreter is saying to you?

THE INTERPRETER: Yes.

THE COURT: Then do you understand, sir, that you have the right to plead guilty or not guilty to Count 1, assault, as you wish?

THE INTERPRETER: Yes.

THE COURT: Okay. Tell him to answer out loud, please. And did you hear and understand the constitutional rights that the Court gave you on an earlier date?

THE INTERPRETER: Yes.

THE COURT: Tell him to speak so the microphone can pick it up, please. Tell him to speak up or we'll stop and he can go back to the jail. Okay. Thank you.

And do you understand the nature of this charge, Count 1, assault?

THE INTERPRETER: Yes.

THE COURT: And do you understand that if you plead guilty, the maximum penalty you could receive is 12 months' imprisonment and/or a $1,000 fine?

THE INTERPRETER: Yes.

THE COURT: Do you understand, sir, that if you plead guilty, you will be waiving your right to any trial proceedings?

THE INTERPRETER: Yes.

THE COURT: And your right to cross-examine those witnesses who would have testified against you if you had gone to trial?

THE INTERPRETER: Yes.

THE COURT: Has anyone promised you anything in an attempt to get you to enter a guilty plea here today?

THE INTERPRETER: No.

THE COURT: Has anyone threatened you in any way in an attempt to get you to enter a guilty plea here today?

THE INTERPRETER: No.

THE COURT: Has anyone attempted to use force against you to get you to enter a guilty plea here today?

THE INTERPRETER: No.

THE COURT: And are you satisfied with your attorney's representation to this point?

THE INTERPRETER: Yes.

THE COURT: And do you understand the proceedings thus far?

THE INTERPRETER: Yes.

THE COURT: Are you under the influence of any drugs, including alcohol, at this time?

THE INTERPRETER: No.

. . . .

THE COURT: All right. How say you, Ismail Mohamed Abdi, to Count 1,
. . .

THE INTERPRETER: Guilty.

THE COURT: All right. Your guilty plea is on the record, and the Court finds it to be voluntary.

Thank you. You may be seated.

The court accepted Abdi's guilty plea, and sentenced him to one year in jail with credit for 95 days served and the balance suspended for one year.

[¶ 7] Abdi's conviction subjected him to adverse immigration consequences under federal law and, with new counsel, he applied for post-conviction relief under N.D.C.C. ch. 29–32.1. Asserting deportation proceedings against him were imminent under federal immigration law, Abdi asked the post-conviction court to consider the application "as submitted on the records before the Court in a motion for summary disposition under [N.D.C.C. § 29–32.1–09] relying on the certified records." The State also sought summary disposition. At the end of an expedited July 16, 1999 post-conviction hearing, Abdi's counsel said "[t]he next hearing in immigration and the final hearing is July 27th. If the Court's capable or willing to give an order before then, it would be greatly appreciated." The post-conviction court then denied Abdi's application and granted the State summary disposition, ruling the trial court's acceptance of Abdi's guilty plea substantially complied with N.D.R.Crim.P. 11 and Abdi's trial counsel did not provide him ineffective assistance of counsel.

## II

[¶ 8] The burden of establishing a basis for post-conviction relief rests on the applicant. *Frey v. State*, 509 N.W.2d 261, 263 (N.D.1993). Post-conviction proceedings under N.D.C.C. ch. 29–32.1 are civil in nature, *Owens v. State*, 1998 ND 106, ¶ 24, 578 N.W.2d 542, and summary disposition is available under N.D.C.C. § 29–32.1–09(1), if "the application, pleadings, any previous proceeding, discovery, or other matters of record show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." We have held a post-conviction court does not err in failing to hold an evidentiary hearing when the parties agree to summary disposition. *See Owens*, at ¶ 17. We review an appeal from a summary denial of post-conviction relief as we review an appeal from a summary judgment. *Wilson v. State*, 1999 ND 222, ¶ 13, 603 N.W.2d 47. If there is a contradiction between the record and an applicant's unsupported assertions, a post-conviction court may accept the record. *State v. Parisien*, 469 N.W.2d 563, 566 (N.D. 1991); *State v. Gilley*, 289 N.W.2d 238, 241 (N.D.1980).

## III

[¶ 9] Abdi argues withdrawal of his guilty plea is necessary to correct a manifest injustice because he did not knowingly and intelligently waive his constitutional rights before pleading guilty.

 [¶ 10] An applicant's attempt to withdraw a guilty plea under the post-conviction procedure act generally is treated as a motion to withdraw a plea under N.D.R.Crim.P. 32(d). *State v. Hendrick,* 543 N.W.2d 217, 218 (N.D.1996). After a court has accepted a guilty plea and imposed sentence, a defendant cannot withdraw the plea under N.D.R.Crim.P. 32(d) unless withdrawal is necessary to correct a manifest injustice. *State v. Farrell,* 2000 ND 26, ¶ 8, 606 N.W.2d 524. A manifest injustice may result from procedural errors by the sentencing court. *Id.* The determination whether a manifest injustice exists for the withdrawal of a guilty plea lies within the court's discretion and will not be reversed on appeal except for an abuse of discretion. *Hendrick,* at 219. An abuse of discretion under N.D.R.Crim.P. 32(d) occurs when the court's legal discretion is not exercised in the interests of justice. *State v. Dalman,* 520 N.W.2d 860, 862 (N.D.1994).

[¶ 11] Before accepting a guilty plea, a trial court must advise the defendant of certain rights under N.D.R.Crim.P. 11, which provides in part:

*(b) Advice to Defendant.* The court may not accept a plea of guilty without first, by addressing defendant personally [except as provided in Rule 43(c) ] in open court, informing the defendant of and determining that the defendant understands the following:

(1) The nature of the charge to which the plea is offered;

(2) The mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered;

(3) That the defendant has the right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty;

(4) That if the defendant pleads guilty there will not be a further trial of any kind, so that by pleading guilty the defendant waives the right to a trial by jury or otherwise and the right to be confronted with adverse witnesses; and

(5) If the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding against the defendant and, if necessary, one will be appointed the defendant, as provided in Rule 44, North Dakota Rules of Criminal Procedure.

 [¶ 12] The advice required by N.D.R.Crim.P. 11(b) is mandatory. *See State v. Abdullahi,* 2000 ND 39, ¶ 9, 607 N.W.2d 561. Although N.D.R.Crim.P. 11 does not require the trial court's advice to follow a ritualistic, predetermined formality, the court must substantially comply with the procedural requirements of the rule to insure the defendant is entering a voluntary guilty plea. *Abdullahi,* at ¶ 9.

## A

 [¶ 13] Abdi argues the trial court failed to inform him of his right against compulsory self-incrimination as required by *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), which held a guilty plea waives the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront accusers, and a waiver of those rights cannot be presumed from a silent record. *See also* N.D.R.Crim.P. 11(b) Explanatory Note (explaining rule codifies requirements of *Boykin* ).

[¶ 14] At Abdi's initial appearance on August 7, 1998, the trial court informed a group of defendants, including Abdi, that he had "the right not to testify at [his] own trial. And by that I mean you can have a trial without ever taking that witness stand. And no one is to comment upon that to anyone at the trial." *See* N.D.R.Crim.P. 5(b)(1)(ii). When the court accepted Abdi's guilty plea on November 9, 1998, the court asked him if he "hear[d] and [understood] the constitutional rights that the Court gave [him] on an earlier date," and he responded "yes."

[¶ 15] A group explanation of the rights outlined in N.D.R.Crim.P. 11(b) complies with the requirement the court address the defendant personally. *Parisien*, 469 N.W.2d at 566. At a change of plea hearing, a trial court is not required to readvise a defendant of each of his rights under N.D.R.Crim.P. 11(b), if the court determines the defendant previously was properly advised of those rights and recalls the advice. *State v. Gunwall*, 522 N.W.2d 183, 185 (N.D.1994).

[¶ 16] Abdi argues there was no interpreter at his August 7 initial appearance, both the trial court and the post-conviction court concluded an interpreter was necessary, and his affidavit establishes he did not understand the rights given at his August 7 appearance. He argues his affidavit "comports with common sense," and the post-conviction court abused its discretion in refusing to allow him to withdraw his guilty plea because he was not informed of his right against compulsory self-incrimination.

[¶ 17] At the August 7 hearing, Abdi said he understood the proceedings, and he requested an interpreter. Although both the trial court and the post-conviction court concluded an interpreter was necessary, that conclusion does not necessarily mean Abdi did not understand the rights that had been given him without an interpreter. At the November 9 hearing, Abdi appeared with an interpreter and the trial court informed him under N.D.R.Crim.P. 11(b)(4) a guilty plea would waive his rights to any trial proceedings and to cross-examine witnesses who would have testified against him. Although the court did not specifically identify Abdi's right against self-incrimination at the November 9 hearing, at that hearing Abdi said he heard and understood the constitutional rights, which included the privilege against compulsory self-incrimination, the court had given him on August 7. The trial court was not required to readvise Abdi of that right at the November 9 hearing. *See Gunwall*, 522 N.W.2d at 185. The record

supports a conclusion Abdi understood his right against compulsory self-incrimination. If there is a contradiction between the record and an applicant's unsupported assertion, a post-conviction court may accept the record. *See Parisien*, 469 N.W.2d at 566.

[¶ 18] We agree with the post-conviction court that the trial court's advice substantially complied with the requirements of N.D.R.Crim.P. 11(b) for accepting a guilty plea. This record is not silent about Abdi's waiver of the privilege against self-incrimination, and we conclude the post-conviction court did not abuse its discretion in denying Abdi's request to withdraw his guilty plea on this basis.

B

[¶ 19] Abdi argues the trial court failed to inquire about plea discussions under N.D.R.Crim.P. 11(c), which provides:

(c) *Insuring That the Plea Is Voluntary.* The court shall not accept a plea of guilty without first, by addressing the defendant personally [except as provided in Rule 43(c)] in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty results from previous discussion between the prosecuting attorney and the defendant or the defendant's attorney.

Abdi argues the trial court failed to comply with the second sentence of N.D.R.Crim.P. 11(c), and if the court would have inquired, it would have learned he pled guilty for an improper reason—to get out of jail quickly. Abdi argues the trial court's lack of inquiry violated the letter and spirit of N.D.R.Crim.P. 11(c).

[¶ 20] In *Farrell*, 2000 ND 26, 606 N.W.2d 524, we recently dealt with a plea challenge based on the second sentence of N.D.R.Crim.P. 11(c) and a nonbinding recommendation for sentencing. In *Farrell*, at ¶ 18, plea discussions resulted in the

defendant pleading guilty to one charge in exchange for dismissal of another charge and the State's nonbinding sentencing recommendation. We said it was apparent an understanding resulted from discussions between the prosecution and defense counsel in that case. *Id.* We concluded, before accepting the plea and imposing a harsher sentence than the State's nonbinding recommendation, the trial court should have inquired further under N.D.R.Crim.P. 11(c) about the defendant's understanding of the informal plea agreement and the voluntariness of the resulting guilty plea. *Farrell,* at ¶ 18.

▆▆▆ [¶ 21] The purpose for the inquiry in N.D.R.Crim.P. 11(c) is for the trial court to ascertain whether a guilty plea is the result of negotiations so the court can inquire further about the negotiation process to assess the defendant's understanding of the terms of any resulting agreements. *Farrell,* 2000 ND 26, ¶¶ 15–17, 606 N.W.2d 524; *see also State v. Beckman,* 1999 ND 54, ¶ 10, 591 N.W.2d 120; *State v. Hoffarth,* 456 N.W.2d 111, 114 (N.D.1990). In *Farrell,* at ¶ 17, we described the reason for the second sentence of N.D.R.Crim.P. 11(c):

> The provisions of N.D.R.Crim.P. 11(c) are virtually identical to F.R.Crim.P. 11(d), and the reason for the second sentence of the rule is explained in the Notes to Advisory Committee on Rules, F.R.Crim.P. 11, by a one-sentence quotation from *Santobello v. New York,* 404 U.S. 257, 261–62, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971): "The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known." The information sought to be elicited by the rule is intended to alert the trial court about plea negotiations so the court can further inquire about the negotiation process to assess the defendant's understanding of the terms of any resulting agreements. *See* 1A Wright, *Federal Practice and Proce-*

*dure: Criminal 3d* § 175.1, at pp. 255–56 (1999).

In *Farrell,* at ¶ 22, we concluded the record established the defendant's guilty plea was not voluntary because he did not understand the nature of his agreement for a nonbinding sentence recommendation. We held the trial court did not substantially comply with N.D.R.Crim.P. 11(c) and withdrawal of the guilty plea was necessary to correct a manifest injustice. *Farrell,* at ¶ 21.

[¶ 22] Here, at an October 7, 1998 hearing, Abdi's counsel informed the trial court he had been "talking" with the prosecution and anticipated an amendment to the information. Counsel asked to schedule the matter for a change of plea. The State filed an amended information on October 9, reducing the charge from two counts of aggravated assault to one count of assault. On November 9, 1998, Abdi pled guilty to the amended information. The court sentenced Abdi to one year in jail with credit for 95 days served and the balance suspended for one year. The sentence followed the State's recommendation, but the court reduced from two to one year the State's recommendation for suspension of the balance of Abdi's jail sentence. During sentencing, Abdi's counsel again mentioned conversations with the prosecution about the amendment to the original two count information.

▆▆▆ [¶ 23] Counsel's statements about talking with the prosecution and the filing of an amended information suggest Abdi's guilty plea resulted from previous discussions between the prosecution and defense counsel within the meaning of N.D.R.Crim.P. 11(c), and the trial court should have made further inquiry for the record under the second sentence of N.D.R.Crim.P. 11(c) to ascertain Abdi's understanding of the terms of any agreement. Unlike *Farrell,* this record is void of any evidence that Abdi misunderstood the nature of any agreement vis-a-vis this charge. Furthermore, in *Abdullahi,* 2000 ND 39, ¶ 19, 607 N.W.2d 561, we recently

held deportation and mandatory, indefinite detention under federal immigration law are collateral consequences of a guilty plea, and a trial court need not advise a defendant of those collateral consequences before accepting a guilty plea. Abdi cannot rely on collateral consequences to claim he did not understand the nature of the discussions or any agreement regarding this charge. Moreover, in contrast to *Farrell*, here the trial court's sentence was less than the State's recommendation for this charge. Without evidence that suggests Abdi did not understand the nature of any agreement or sentencing recommendation vis-a-vis this charge, we will not order the guilty plea withdrawn to correct a manifest injustice. *See* N.D.R.Crim.P. 52(a).[1] We hold the post-conviction court did not abuse its discretion in refusing to allow Abdi to withdraw his guilty plea on this basis. *See United States v. Timmreck*, 441 U.S. 780, 784–84, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979) (holding conviction based on guilty plea not subject to collateral attack for violation of F.R.Crim.P. 11 which is technical and not of constitutional magnitude).

## C

■ [¶ 24] Abdi argues he did not knowingly and intelligently waive his constitutional rights because he did not understand the interpreter.

[¶ 25] At an August 27, 1998 hearing, the following colloquy occurred:

INTERPRETER: (Inaudible) language today. And he [Abdi] said he can't speak Swahili, he speak Somali.

THE COURT: He said what?

INTERPRETER: He speak Somali.

THE COURT: He speaks a different language than what you can interpret?

INTERPRETER: Yeah. I can speak Somali and Swahili both and he said he can speak Somali and I was speaking Swahili because I was requested on Swahili today.

THE COURT: So he wants a different interpreter?

[COUNSEL]: Well, I think she can do it, Your Honor.

INTERPRETER: No, I can speak both.

[COUNSEL]: But she tried it in Swahili, now she wants to do it in Somalian.

THE COURT: Oh, sure. Go ahead. Are we communicating now?

INTERPRETER: Yup.

■ [¶ 26] At the November 9 change-of-plea hearing, Abdi stated on the record he understood his interpreter. Abdi's interpreter filed an affidavit stating she had translated everything correctly and Abdi understood the proceedings. Abdi nevertheless claims he did not understand the interpreter. In post-conviction proceedings, if there is a contradiction between the record and the applicant's unsupported assertion, the court may accept the record. *See Parisien*, 469 N.W.2d at 566. Here, because of pending immigration proceedings Abdi sought summary disposition to expedite his post-conviction application, and he cannot now claim error because an evidentiary hearing was not held. *See Owens*, 1998 ND 106, ¶ 17, 578 N.W.2d 542. Under these circumstances, we reject Abdi's after-the-fact assertion that he did not understand the interpreter.

---

1. The explanatory note to N.D.R.Crim.P. 11(c) explains the purpose of subdivision (c) is to require the court to determine whether a guilty plea is voluntary and to inquire whether the plea was the result of discussions between the defense attorney and the prosecuting attorney. The explanatory note indicates an implicit assumption that any promise made in reaching a proper plea agreement does not render the plea involuntary. Nothing in this record indicates any improper plea agreement, and the record is void of any evidence Abdi misunderstood the nature of any agreement vis-a-vis this charge.

Unlike F.R.Crim.P. 11, our rule does not include a subdivision for harmless error, however, the explanatory note to N.D.R.Crim.P. 11 says the harmless error provisions of N.D.R.Crim.P. 52(a) apply to all the criminal rules.

[¶ 27] We conclude the post-conviction court did not abuse its discretion in deciding withdrawal of Abdi's guilty plea was not necessary to correct a manifest injustice.

## IV

[¶ 28] Abdi argues his trial counsel's representation deprived him of effective assistance of counsel. Abdi argues his counsel (1) advised him to plead guilty simply to get out of jail quickly, despite a meritorious self-defense claim; (2) failed to retain a competent interpreter; (3) failed to inform him of his constitutional rights; (4) failed to perform basic investigation; and (5) did not inform him of the "certain" immigration consequences of his guilty plea.

[¶ 29] A criminal defendant is entitled to effective assistance of counsel. *E.g. DeCoteau v. State,* 1998 ND 199, ¶ 6, 586 N.W.2d 156. We summarized our standard for reviewing a claim of ineffective assistance of counsel in *Stoppleworth v. State,* 501 N.W.2d 325, 327 (N.D.1993):

When a defendant raises an ineffective-assistance-of-counsel argument, it is the defendant's burden to prove that counsel's assistance was ineffective at trial. *State v. Skaro,* 474 N.W.2d 711, 714 (N.D.1991). In carrying that burden, the defendant must establish two elements. "First, the defendant must prove that the counsel's performance was deficient. Second, the defendant must prove that the deficient performance prejudiced the defendant." *State v. Wilson,* 488 N.W.2d 618, 622 (N.D. 1992) [citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ]. In attempting to prove the first element, "the defendant must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Skaro,* 474 N.W.2d at 715 (quoting *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065). The second element requires the defendant to prove

that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. at 2068). *See also State v. Bowers,* 426 N.W.2d 293, 295 (N.D.1988); *State v. Thompson,* 359 N.W.2d 374, 377 (N.D.1985).

In the context of a guilty plea, the United States Supreme Court has held the second element of a claim of ineffective assistance of counsel, the "prejudice" prong, requires the defendant to show there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

[¶ 30] Here, Abdi asserted deportation proceedings against him were imminent under federal immigration law, and he asked the post-conviction court for summary disposition of his application. Abdi submitted affidavits claiming his trial counsel advised him to plead guilty despite a meritorious self defense claim; failed to retain an interpreter Abdi could understand; failed to inform Abdi of his constitutional rights; failed to contact the "victims" of the assault; and failed to advise Abdi of the "certain" immigration consequences of a guilty plea. Abdi did not submit an affidavit of his trial counsel, however, and during oral argument to this Court, Abdi's post-conviction counsel claimed he was unable to locate Abdi's trial counsel. On appeal, Abdi essentially asks us to accept his factual assertions and conclude his trial counsel's representation was ineffective.

[¶ 31] Ineffective assistance of counsel claims generally are unsuited for summary disposition because they ordinarily require development of the record in an evidentiary hearing. *Wilson,* 1999 ND 222, ¶ 16, 603 N.W.2d 47; *DeCoteau,* 1998 ND 199, ¶ 7, 586 N.W.2d 156; *Owens,* 1998 ND 106, ¶ 41, 578 N.W.2d 542. The parties, however, may agree to proceed

without an evidentiary hearing. *See Owens,* at ¶ 17. Abdi bears a heavy burden of proving trial counsel's assistance was ineffective, and there is a strong presumption counsel's conduct falls within the wide range of reasonableness. *DeCoteau,* 1998 ND 199, ¶ 6, 586 N.W.2d 156; *Stoppleworth,* 501 N.W.2d at 327.

[¶ 32] Here, Abdi sought summary disposition of his claim of ineffective assistance, and he cannot now claim error because an evidentiary hearing was not held. *See Owens,* 1998 ND 106, ¶ 17, 578 N.W.2d 542. Abdi did not procure an affidavit from his trial counsel, and on this record, we cannot say he overcame the strong presumption his trial counsel provided effective assistance of counsel. We conclude the post-conviction court did not err in deciding the record failed to establish Abdi's trial counsel provided ineffective assistance of counsel.[2]

## V

[¶ 33] Abdi argues detention without possibility of bail and deportation under federal immigration law constitute cruel and unusual punishment. In *Abdullahi,*

2. We have often said in direct appeals where the record is inadequate to review a claim of ineffective assistance of counsel, the defendant may raise the issue in a post-conviction proceeding. *See, e.g., State v. Frey,* 441 N.W.2d 668, 673 (N.D.1989). Here, Abdi

2000 ND 39, ¶ 22, 607 N.W.2d 561, we rejected a similar argument and held collateral immigration proceedings by federal authorities did not subject a defendant to cruel and unusual punishment in a state criminal proceeding. *Abdullahi* is dispositive of Abdi's argument.

## VI

[¶ 34] We affirm the judgment denying Abdi's application for post-conviction relief.

[¶ 35] WILLIAM A. NEUMANN, DALE V. SANDSTROM, MARY MUEHLEN MARING, JJ., WILLIAM F. HODNY, S.J., concur.

[¶ 36] WILLIAM F. HODNY, S.J., sitting in place of KAPSNER, J., disqualified.

claimed deportation proceedings were imminent and sought summary disposition of his application. Although this is not a direct appeal, under these circumstances, Abdi may raise this issue in a subsequent post-conviction proceeding.