Donovan HOWARD, Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 96–3712.

United States Court of Appeals,
Seventh Circuit.

Argued May 19, 1997.

Decided Feb. 2, 1998.

Edward John Hunt (argued), Milwaukee, WI, for Petitioner–Appellant.

Mel S. Johnson (argued), Office of the United States Attorney, Milwaukee, WI, for Respondent–Appellee.

Before RIPPLE, KANNE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

On October 1, 1992, petitioner Donovan Howard and fourteen other defendants were indicted on a variety of charges relating to their cocaine distribution enterprise in Milwaukee, Wisconsin. Howard pleaded guilty

and was convicted on counts 1 (conspiracy to distribute cocaine), 21 (cocaine distribution), and 23 (using and carrying a firearm during and in relation to the drug offenses, in violation of 18 U.S.C. § 924(c)). In the wake of the Supreme Court's decision in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), he, like many others, has now brought a petition under 28 U.S.C. § 2255, seeking to withdraw his guilty plea on the firearm charge. We conclude that the factual basis for Howard's plea shows enough to satisfy the *Bailey* standards, and we therefore affirm the district court's judgment denying his petition.

The central facts underlying Howard's guilty plea were presented in the government's offer of proof at the March 1, 1993, hearing at which the district court accepted the plea. With respect to the critical question whether Howard had "used" or "carried" a firearm, the government offered the following supporting information:

> With regard to firearms, Marvin Barnes would testify that he on one occasion saw Donovan Howard and [Henry] Bams packaging cocaine at this greenhouse that several of the witnesses referred to.... While they were present packaging the cocaine at that house, Donovan Howard and [Henry] Bams had firearms with them.
>
> Percy Lee would testify that at Donovan Howard's request he bought a Tec–9 firearm from Bobby Coleman....
>
> Sherry Williamson would testify that in early February of 1991 she was present with Henry Howard in the basement of [a] house at 4900 North 49th Street. Also present were Donovan Howard, Henry Bams, and Larry Jackson. The three of them were counting money, there were guns present, and when they were done counting the money the firearms were placed up in ceiling panels in the basement, and the Tec–9 was included in the guns which she saw at that time.

In addition, the government's proffer indicated that when federal agents searched the 4900 North 49th Street residence on February 8, 1991, they located the firearms (including the Tec–9) hidden in the basement ceiling panels, and they found in the basement a "torn plastic bag which had white powdery residue in it."

In keeping with the requirements of Fed. R.Crim. P. 11, the district court listened to the government's proffer and asked Howard a series of questions designed to ensure that Howard understood the nature of the charges against him and the rights he would be forfeiting by entering a plea of guilty. The court then made the following oral ruling:

> All right. The court is going to find that this defendant is competent to understand the nature of these proceedings and to participate in them.
>
> The court is going to further find that there is a factual basis for the charge against this defendant, and there is, based upon the presentation made this morning, a factual basis for the court to accept the plea.
>
> The court will further find that the waiver of the constitutional rights of this defendant is intelligently and voluntarily made and with sufficient awareness of the relevant circumstances of the permissible punishment in order to permit the court to accept the plea agreement and the court will accept the plea agreement.

The district court subsequently ordered that a presentence report (PSR) be prepared. The PSR described the conspiracy in somewhat greater detail. For example, it recounted an incident in which the police stopped co-conspirator Robert Howard in his car, and found cocaine on him and a loaded handgun in the glove compartment of the car. It also reported that co-conspirator Marvin Barnes regularly drove to Chicago to buy cocaine, with a gun stashed under the car seat. After a sentencing hearing held on May 21, 1993, the district court sentenced Howard to a term of 180 months (60 of which represented the mandatory consecutive sentence for Howard's firearm conviction under 18 U.S.C. § 924(c)).

In his § 2255 petition, Howard asked the district court to vacate his conviction under § 924(c), arguing that the facts adduced at the March 1, 1993, hearing did not establish "use" or "carrying" as those terms are now

understood post-*Bailey*. The court held an evidentiary hearing on the petition on August 22, and ultimately denied it because (1) the court agreed with the government that the evidence at the plea colloquy established that Howard "used" a firearm by having it "at the ready" while he and his co-defendants were counting money, and (2) under the *Pinkerton* doctrine (*see Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)), Howard's § 924(c) conviction could be based on the fact that there was evidence indicating that Howard's co-conspirators had used or carried firearms in violation of the statute. Although the district court did not specify the evidence on which it relied for the latter finding, we presume the court was referring to the evidence contained in the PSR.

■ As it has done in previous cases, the government argues that we are precluded from reaching many of the issues Howard raises in his appeal. The government specifically contends that (1) Howard waived his right to challenge the factual basis for his conviction when he pleaded guilty in 1993, and (2) he waived the argument that he did not knowingly and intelligently enter into his plea to the firearm conviction by not raising it below. For the reasons we described most recently in *Woodruff v. United States*, 131 F.3d 1238 (7th Cir.1997), we reject the government's first waiver argument and adhere to this court's rule that § 2255 is available for a case in which the defendant argues that the conduct for which he was convicted never rose to the level of a federal offense. But *see Bousley v. Brooks*, 97 F.3d 284 (8th Cir. 1996), *cert. granted*, ── U.S. ──, 118 S.Ct. 31, 138 L.Ed.2d 1060 (1997) (finding that a guilty plea has the effect of waiving a Bailey challenge on collateral attack); *Young v. United States*, 124 F.3d 794 (7th Cir.1997), *petition for cert. filed*, Nov. 19, 1997 (No. 97–6853).

■ The government's argument that Howard waived the right to claim that his plea was not knowing and intelligent, however, is correct. The government points out that Howard never argued to the district court that his guilty plea was not "knowing" because of his erroneous pre-Bailey understanding of the law applicable to claims under § 924(c). *See Henderson v. DeTella*, 97 F.3d 942, 946 (7th Cir.1996), *cert. denied*, ── U.S. ──, 117 S.Ct. 1471, 137 L.Ed.2d 683 (1997) (arguments that were not raised before the district court are waived on appeal). We agree that it is too late for Howard to shift his ground in this way. To the extent that Howard is now trying to argue, as he would be permitted to do under *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), that his guilty plea was not voluntary and intelligent, he is precluded from doing so by his failure to pursue this line below. Thus, subject to whatever the Supreme Court may hold in *Bousley*, Howard even theoretically would be entitled to relief only on a theory that rests ultimately on the "complete miscarriage of justice" theory of *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (miscarriage of justice occurs if there is a conviction and punishment for an act that the law does not make criminal).

■ Turning then to Howard's argument concerning the sufficiency of the factual basis for his plea to the § 924(c) charge, we must first define what that record "includes" for the purposes of our review. Obviously, the record includes the transcript of the March 1, 1993, hearing at which the district court conducted its Fed.R.Crim.P. 11 colloquy, but the harder question is whether we may consider the PSR, which contains more extensive details of the conduct of Howard's co-conspirators, but was only prepared after the district court's March 1, 1993, rulings under Rule 11. We emphasize that the question is what facts supported the district court's ruling, not whether Rule 11 was followed in the initial plea hearing. *See United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979) (violation of Rule 11 cannot support collateral attack under § 2255).

Our starting point is with the text of Fed. R.Crim.P. 11 itself. Section (f) of Rule 11 states the requirement that the district court establish the factual basis for pleas before entering judgment:

(f) Determining Accuracy of Plea. Notwithstanding the acceptance of a plea of guilty, the court should not enter a judg-

ment upon such a plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

Fed.R.Crim.P. 11(f). The question, in brief, is whether we must confine our inquiry to the facts that the government brought out during the plea colloquy itself, or if we may also take into account information found in the PSR that was before the court by the time it actually "enter[ed] judgment upon ... the plea." On that point, the government draws our attention to the Advisory Committee Notes to the 1966 and 1974 amendments to Rule 11, which indicate quite clearly that the district courts may indeed consider presentence reports in conjunction with Rule 11(f). The Advisory Committee Notes to the 1966 Amendment read, in pertinent part:

> The court should satisfy itself, by inquiry of the defendant or the attorney for the government, or by examining the presentence report, or otherwise, that the conduct which the defendant admits constitutes the offense charged in the indictment[.]

The Advisory Committee Notes to the 1974 Amendment similarly state that:

> [a Rule 11(f)] inquiry might be made of the defendant, of the attorneys for the government and the defense, of the presentence report when one is available, or by whatever means is appropriate in a specific case.

Accordingly, we have said that "it is permissible for the district judge to consider and look to more than the defendant's responses to the court's questions to determine whether there is a factual basis for the plea." *United States v. Wetterlin*, 583 F.2d 346, 352 (7th Cir.1978). See also *United States v. Fountain*, 777 F.2d 351, 356 (7th Cir.1985). *Cf. Woodruff, supra* (relying on Woodruff's PSR to show that guns were used).

Howard makes much of the fact that the presentence report on which the government urges us to rely was not available to the district court when it made its March 1, 1993, ruling. This means, he urges, that the government is now "stuck with" the evidence it presented in its offer of proof at the March 1 hearing. In our view, however, this argument overlooks the distinction that Rule 11 as a whole draws between the "acceptance" of a guilty plea and the entry of judgment on the plea. Rule 11(c) details certain advice that the court must give to a defendant before a guilty plea may be accepted, including a description of the nature of the charge and the penalties the defendant potentially faces, the defendant's right to be represented by an attorney, the defendant's right to plead not guilty and be tried by a jury (with the full panoply of procedural protections at that trial), the fact that a guilty plea means a waiver of the right to a trial, and the court's power to question the defendant under oath about the offense. Rule 11(d) prescribes ways in which the court must ensure that the plea is voluntary, not coerced, and contains the requirement that any plea discussions the defendant has had with the government must be disclosed. Rule 11(e) then describes in some detail the procedures that must be followed if there is a plea agreement.

Only then does the Rule turn to the need to determine the accuracy of the plea, in Rule 11(f). As we noted above, Rule 11(f) says "[n]otwithstanding the *acceptance* of a plea of guilty, the court should not enter a *judgment* upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." (Emphasis added.) As Rule 32(d)(1) makes clear, judgment is not entered until after the court has completed the sentencing process: "A judgment of conviction must set forth the plea; the verdict or findings, the adjudication, and the sentence." Fed R.Crim. P. 32(d)(1). Under Rule 32(e), a defendant is entitled to move to withdraw a plea of guilty before sentence is imposed, and the district court may permit withdrawal "if the defendant shows any fair and just reason." *Id.*

█ Taken as a whole, this structure indicates that the district court is entitled to take into account not only the government's proffer at the plea hearing, but also information in the presentence report, when it makes its final determination before entry of judgment that there is an adequate factual basis for a guilty plea. (This implies that any finding of an adequate factual basis at the initial plea hearing is necessarily preliminary.) This is,

of course, the conclusion that the Advisory Committee also reached. We add our observations only to show that an independent look at the procedures supports the Committee's conclusions. We have therefore evaluated the factual basis for Howard's conviction using evidence from both his plea hearing and his PSR.

 At Howard's plea hearing the government offered to prove that one co-conspirator, Marvin Barnes, witnessed Donovan Howard himself and Henry "Corvette" Bams packaging cocaine, and that the two had firearms with them at the time. In addition, Sherry Williamson was prepared to testify that in early February of 1991 she was present with Henry Howard (another co-conspirator) in the basement of the house at 4900 North 49th Street, along with Donovan Howard, Bams, and Larry Jackson. The latter three were counting money, guns were present, and when they were finished counting their money the firearms were placed up in ceiling panels in the basement. Both these examples go beyond the mere passive possession of a firearm that *Bailey* rejected as insufficient. Having guns at the ready while one is packaging illegal drugs or counting the proceeds from drug sales is significantly different from putting a gun in a back bedroom or under a mattress for security's sake. If we also take into account the additional information in the PSR, Howard's argument collapses utterly because of the co-conspirator liability doctrine of *Pinkerton*. Co-conspirator Robert Howard was driving in his car with cocaine on him and a loaded handgun in the glove compartment—circumstances that easily prove "carrying" a weapon in connection with the drug offense under this circuit's law. *See United States v. Molina*, 102 F.3d 928 (7th Cir.1996); *Wilson v. United States*, 125 F.3d 1087 (7th Cir.1997); see also — U.S. ——, 118 S.Ct. 621, 139 L.Ed.2d 506 (1997) *granting cert. in United States v. Muscarello*, 106 F.3d 636 (5th Cir.1997), and *United States v. Cleveland*, 106 F.3d 1056 (1st Cir.1997) (*cert.* granted to interpret the meaning of "carrying" for purposes of § 924(c)). Marvin Barnes's habit of driving to Chicago to buy cocaine with a gun kept under his car seat also was plainly "carrying" a firearm in relation to a drug offense. Under *Pinkerton*, the actions of Robert Howard and Marvin Barnes are attributable to Donovan Howard, and they are enough to sink Donovan Howard's chances of obtaining relief from his § 924(c) conviction.

The district court's judgment is AFFIRMED.