2002 ND 52

**Larry FROISTAD, Petitioner and Appellant**

v.

**STATE of North Dakota, Respondent and Appellee.**

No. 20010111.

Supreme Court of North Dakota.

March 18, 2002.

Monte L. Rogneby, Vogel Law Firm, Bismarck, N.D., for petitioner and appellant.

Steven J. Wild, State's Attorney, Bowman, N.D., for respondent and appellee.

SANDSTROM, Justice.

[¶ 1] Larry Froistad appealed from a Southwest Judicial District Court order denying his petition for post-conviction relief. We affirm, concluding the district court did not err in denying Froistad's petition for post-conviction relief.

I

[¶ 2] On August 7, 1998, Froistad pled guilty to murdering his daughter. He filed a motion for post-conviction relief on June 14, 2000. Froistad argued he should be allowed to withdraw his guilty plea for several reasons: (1) the court failed to honor his request to withdraw his guilty plea, (2) the court failed to establish a factual basis for his guilty plea, (3) the court failed to ensure his plea was voluntary, (4) the court violated his right to be present during the proceedings, and (5) he received ineffective assistance of counsel. His petition was denied after a post-conviction relief hearing held January 31 and February 1, 2001.

[¶ 3] The district court had jurisdiction under N.D.C.C. §§ 27–05–06 and 29–32.1–03. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 29–32.1–14.

II

[¶ 4] An attempt to withdraw a guilty plea is treated as a motion to withdraw under N.D.R.Crim.P. 32(d). *Abdi v. State*, 2000 ND 64, ¶ 10, 608 N.W.2d 292 (citing *State v. Hendrick*, 543 N.W.2d 217, 218 (N.D.1996)); *State v. Abdullahi*, 2000 ND 39, ¶ 7, 607 N.W.2d 561. Rule 32(d), N.D.R.Crim.P., provides:

(d) Plea Withdrawal.

(1) The court shall allow the defendant to withdraw a plea of guilty whenever the defendant, on a timely motion for withdrawal, proves withdrawal is necessary to correct a manifest injustice.

(2) A motion for withdrawal is timely if made with due diligence, considering the nature of the allegations, and is not necessarily barred be-

cause made subsequent to judgment or sentence.

(3) In the absence of a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw a plea of guilty as a matter of right once the plea has been accepted by the court. Before sentence, the court in its discretion may allow the defendant to withdraw a plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.

[¶ 5] The standard for withdrawal differs depending upon when the motion to withdraw is made. *See, e.g., State v. Klein,* 1997 ND 25, ¶¶ 12–16, 560 N.W.2d 198.

"This distinction rests upon practical considerations important to the proper administration of justice. Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interests in protecting the right of the accused to trial by jury." *State v. Millner,* 409 N.W.2d 642, 644 (N.D.1987) (quoting *Kadwell v. United States,* 315 F.2d 667, 670 (9th Cir.1963)).

[¶ 6] A defendant has a right to withdraw a guilty plea before it is accepted by the court. *State v. Klein,* 1997 ND 25, ¶ 12, 560 N.W.2d 198; *State v. Welch,* 356 N.W.2d 147, 149 (N.D.1984). *Klein* also held, when a defendant's guilty plea is part of a plea agreement, the guilty plea cannot be accepted until the plea agreement is accepted. *Klein,* at ¶ 19. *Klein* sought to follow federal case law regarding the acceptance of guilty pleas as part of plea agreements, but the case *Klein* followed is no longer good law. *Klein* relies upon *United States v. Cordova–Perez,* a Ninth Circuit case, for the proposition a " 'plea

agreement and the plea are "inextricably bound up together" such that deferment of the decision whether to accept the plea agreement carried with it postponement of the decision whether to accept the plea.' " *Klein,* at ¶ 19 (quoting *United States v. Cordova–Perez,* 65 F.3d 1552, 1556 (9th Cir.1995) (quoting *United States v. Sanchez,* 609 F.2d 761, 762 (5th Cir.1980))). *United States v. Cordova–Perez* was overruled by the United States Supreme Court in *United States v. Hyde,* 520 U.S. 670, 117 S.Ct. 1630, 137 L.Ed.2d 935 (1997). The Court, in *Hyde,* held that when a defendant has pled guilty, pursuant to a plea agreement, and the district court accepts the plea but defers decision on whether to accept the plea agreement, a "defendant may not withdraw his plea unless he shows a 'fair and just reason' under Rule 32(e)." *Id.* at 671, 117 S.Ct. 1630. "The Court ultimately held that when the district court has accepted a defendant's plea but deferred accepting the plea agreement, the plea may not be withdrawn unless the defendant provides a 'fair and just reason' under Rule 32(e)." *United States v. Grant,* 117 F.3d 788, 791 (5th Cir.1997) (summary of the *Hyde* holding). The portion of *Klein* relying on *Cordova–Perez* is overruled, and we accept the standard set forth in *Hyde. Id.*

[¶ 7] If a district court rejects a plea agreement after a defendant has pled guilty, the court shall "afford the defendant the opportunity to then withdraw the plea." N.D.R.Crim.P. 11(d)(4).

[¶ 8] "After a guilty plea is accepted, but before sentencing, the defendant may withdraw a guilty plea if necessary to correct a manifest injustice, or, if allowed in the court's discretion, for any 'fair and just' reason unless the prosecution has been prejudiced by reliance on the plea." *Klein,* 1997 ND 25, ¶ 13, 560 N.W.2d 198;

*see also State v. Sisson*, 1997 ND 158, ¶ 14, 567 N.W.2d 839.

[¶ 9] "When a court has accepted a plea and imposed sentence, the defendant cannot withdraw the plea unless withdrawal is necessary to correct a 'manifest injustice.'" *Klein*, 1997 ND 25, ¶ 15, 560 N.W.2d 198; *see also Abdi v. State*, 2000 ND 64, ¶ 10, 608 N.W.2d 292. The finding of whether a manifest injustice exists, which would necessitate the withdrawal of a guilty plea, rests within the court's discretion and will not be reversed on appeal except for an abuse of discretion. *Abdi*, 2000 ND 64, ¶ 10, 608 N.W.2d 292. "An abuse of discretion under N.D.R.Crim.P. 32(d) occurs when the court's legal discretion is not exercised in the interests of justice." *Abdi*, at ¶ 10 (citing *State v. Dalman*, 520 N.W.2d 860, 862 (N.D.1994)).

### III

[¶ 10] A defendant's oral statement may be treated as a motion to withdraw a guilty plea. *State v. Farrell*, 2000 ND 26, ¶ 7, 606 N.W.2d 524. In *Farrell*, the district court refused to accept the sentence recommendation the State and Farrell had agreed upon. *Id.* at ¶ 4. After he was given a lengthier sentence than recommended, Farrell specifically asked, "Well then I have a right to change my plea then also, don't I?" *Id.* at ¶ 5. The district court responded he did not have a right to change his plea and proceeded with the sentencing hearing. *Id.* at ¶ 5. The case was remanded to the district court to permit Farrell to withdraw his guilty plea because the district court did not substantially comply with the requirements of N.D.R.Crim.P. 11(c). *Id.* at ¶¶ 21–22.

[¶ 11] Other jurisdictions have treated oral statements at sentencing hearings as motions to withdraw guilty pleas. *See Connecticut v. Johnson*, 253 Conn. 1, 751 A.2d 298, 329 (2000) ("Your honor, I would just like to say that my plea of guilty was not voluntary and . . . was not made with my full understanding and I ask that the court . . . permit me to withdraw my plea."); *United States v. Casey*, 951 F.2d 892, 893 (8th Cir.1991) ("Well, quite honestly, Judge, because of the prosecution's intimidation, coercion, threats of scandal and slander, and almost downright blackmail, I think, under any ordinary circumstances, one might consider a plea of guilty."); *United States v. Turner*, 898 F.2d 705, 713 (9th Cir.1990) ("I feel that I am being blamed for a lot of stuff I didn't do.").

[¶ 12] Froistad entered his guilty plea on August 7, 1998. The district court conducted a Rule 11 inquiry and approved the plea agreement in all respects, subject to a review of the presentence report. In the two months between his plea of guilty and his sentencing hearing, Froistad claims he made six attempts to withdraw his guilty plea. Of the six attempts, only two were directed to the district court and could possibly be considered attempts to withdraw his guilty plea. In his October 8, 1998, response to the presentence investigation report, Froistad wrote, "With all these facts in consideration, it seems clear that the defendant should be afforded every opportunity to be fairly represented in court. At the very least, he should be permitted to withdraw the guilty plea, dismiss the San Diego attorneys and be appointed an attorney by the court."

[¶ 13] At his sentencing hearing, also held on October 8, 1998, the district court provided Froistad with several opportunities to request a withdrawal of his guilty plea.

THE COURT: Very well, Mr. Froistad, you have the right to address the Court and submit such comments as

you choose. You may do so at this time. You may remain seated, if you are more comfortable, or stand, whatever you choose.

MR. FROISTAD: Your Honor, I guess the only thing I really have to say is that I'm not innocent of everything but I am innocent of murder. The physical evidence says so. If I'd had some decent representation, I wouldn't be here now. I'm sorry for what I did do. I can't take it back. That's probably a good way to end.

THE COURT: You may take your time and submit any additional comments as you wish. If you'd like to take a moment to make sure that you've collected all of your thoughts. Do you wish to add anything else, Mr. Froistad?

MR. FROISTAD: No.

At this point, the district court "accepted the negotiated plea agreement in all respects."

[¶ 14] Again before the district court imposed Froistad's sentence, it gave him an opportunity to speak.

THE COURT: Alright. I am prepared now to impose sentence, is there anything else you'd like to add?

MR. FROISTAD: Your Honor, with regard to the confession. I was not only under the influence of substances, but in a psychotic state. I don't know if you've ever been in a psychotic state, it's like having several nightmares at once that you can't wake up from or that you do wake up from and that don't go away. This is the condition I was in when I wrote the confession. I believe that that's sufficient reason to call it into question, but I'm not going to argue with the Court about it at this time.

THE COURT: As indicated by [the State's attorney] at the plea hearing,

both the strengths and the weaknesses of the State's case were considered by the State when they entered into this plea agreement with you. That is, whether there was any question at all about the merits of your admissions or the admission of that statement into evidence. Those doubts are resolved by the plea agreement. They were considered in providing to you a sentence less than the maximum that would be provided by our law in North Dakota. Anything else you'd like to add?

MR. FROISTAD: No, sir.

Finally, after the district court had recited the term and conditions of the sentence it imposed, it gave Froistad one final opportunity to speak.

THE COURT: Mr. Froistad, do you understand the terms and conditions of the sentence I have just imposed?

MR. FROISTAD: Yes, Your Honor.

THE COURT: Do you have any questions about it now?

MR. FROISTAD: No.

[¶ 15] Unlike the defendant in *Farrell*, Froistad did not ask the trial court to withdraw his plea. *State v. Farrell*, 2000 ND 26, ¶ 5, 606 N.W.2d 524. Froistad asserted he should be "permitted to withdraw [his] guilty plea." At the sentencing hearing, the district court asked Froistad no less than four times whether he had anything else to say. Froistad stated he wasn't "innocent of everything" but he was "innocent of murder." A defendant may maintain his or her innocence and still plead guilty. *See North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit

his participation in the acts constituting the crime."). Froistad also questioned his mental state at the time he confessed, but conceded he wasn't "going to argue with the Court about it at this time." Froistad's responses show he wished to maintain his innocence and he questioned his mental state. Froistad gave no indication he wished to withdraw his plea, after being given multiple opportunities to raise the issue at the sentencing hearing.

[¶ 16] Froistad's comments did not constitute a request to withdraw his guilty plea. The district court did not err in finding Froistad made no request to withdraw his guilty plea.

IV

[¶ 17] Rule 11(e), N.D.R.Crim.P., provides:

> Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment or dispositional order upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.[1]

[¶ 18] This Court, in *Kaiser v. State,* stated the importance of establishing a factual basis for a guilty plea.

> Obtaining a factual basis for the plea serves important purposes. First, it assures that a defendant who seeks to plead guilty is in fact guilty. Persons whose conduct does not fall within the charges brought by a prosecutor should not plead guilty, but unless a factual basis is required, the risk of innocent persons being adjudicated guilty is enhanced. In addition, the finding of a factual basis, when made a matter of record, eliminates post-conviction factfinding proceedings aimed at determining the accuracy of guilty pleas. Finally, the information developed in determining the factual basis is often useful to the court at sentencing. A.B.A. Standards for Criminal Justice, Receiving and Acting Upon a Plea, Section 14–1.6(a), page 14.34.

417 N.W.2d 175, 178 (N.D.1987).

[¶ 19] To establish a factual basis for the plea, the court must ascertain "that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty." *Libretti v. United States,* 516 U.S. 29, 38, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995) (quoting Advisory Committee's Notes on Fed.R.Crim.P. 11); *see also United States v. Marks,* 38 F.3d 1009, 1012 (8th Cir.1994). The court accepting the plea should compare the elements of the crime charged to the facts admitted to by the defendant. 24 James Wm. Moore, et al., *Moore's Federal Practice* § 611.08[1] (3d ed.2001).

[¶ 20] Previous North Dakota cases have dealt with the absence of a factual basis, but not with the adequacy of a factual basis. Federal case law provides some guidance. A factual basis setting forth the elements of the crime may be enough if sufficiently specific. *United States v. Hinojosa–Lopez,* 130 F.3d 691, 695 (5th Cir.1997); *Kloner v. United States,* 535 F.2d 730, 734 (2d Cir.1976) ("the indictment specified conduct constituting a relatively simple offense—that the defendant 'knowingly and willfully took and carried away [from a financial institu-

---

1. The federal counterpart to our Rule 11(e) is found in Federal Rule 11(f), and is nearly identical to our rule.

> Notwithstanding the acceptance of a plea of guilty, the court should not enter a judg-ment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

Fed.R.Crim.P. 11(f).

tion] with intent to steal, money in excess of $100.00' ").

[¶ 21] Federal case law also allows courts to consider information beyond what is presented at the plea hearing. *United States v. Andrades,* 169 F.3d 131, 136 (2d Cir.1999); *Howard v. United States,* 135 F.3d 506, 509–10 (7th Cir.1998). In *Howard,* the court stated the district court was entitled to take into account "information in the presentence report, when it makes its final determination . . . that there is an adequate factual basis for a guilty plea." *Howard,* at 509.

[¶ 22] Froistad cites to two cases to support his position the factual basis given was not adequate, *Kaiser v. State,* 417 N.W.2d 175, 178–79 (N.D.1987), and *Rizzo v. United States,* 516 F.2d 789, 793–94 (2nd Cir.1975). Both cases are distinguishable from Froistad's position. In *Kaiser,* no factual basis was given. 417 N.W.2d at 178–79. In *Rizzo,* the defendant pled guilty to a charge of "obstructing, delaying and affecting commerce and the movement of articles in commerce by obtaining money . . . through the inducement of actual and threatened use of force, violence and fear." 516 F.2d at 791. The court held the factual basis was inadequate because the record did not show any evidence of use of force, violence, or fear. *Id.* at 793–94. This, coupled with the defendant's statement he "understood [his] role" in the acts charged in the indictment, led the court to allow the defendant to plead again. *Id.* at 794.

[¶ 23] Froistad was charged with a violation of N.D.C.C. § 12.1–16–01(1)(a), "intentionally or knowingly caus[ing] the death of another human being." The postconviction court found two documents, taken together, provided a factual basis for Froistad's guilty plea. The first is the plea agreement itself. The factual basis set forth in the plea agreement states:

I, Larry Froistad, on the 31st day of May, 1995, did knowingly cause the death of another human being, namely, [my daughter]. Such act constitutes the crime of murder, a class AA felony in violation of 12.1–16–01(a) of the North Dakota Century Code.

A document filed as Exhibit 3 provided:

Larry Froistad, being first duly sworn on oath, deposes and states:

1. That on or about the 31st day of May, 1995, in Bowman County, North Dakota, a fire occurred in my residence. My daughter . . . died in that fire.

2. That I confessed over the Internet, in detail, that I had killed my daughter in the May 31, 1995, fire.

The district court allowed Exhibit 3 to be used as an additional factual basis and accepted Froistad's guilty plea. The two factual basis statements given and signed by Froistad acknowledge his conduct constituted a violation of N.D.C.C. § 12.1–16–01(1)(a). In addition, the presentence investigation report prepared for Froistad's sentencing hearing contains information sufficient to create a factual basis for Froistad's guilty plea.

[¶ 24] The district court did not err in finding a sufficient factual basis exists for Froistad's guilty plea.

## V

[¶ 25] Froistad argues the district court erred in not following the procedures set out in N.D.R.Crim.P. 11 to ensure his plea was knowing and voluntary. Rule 11, N.D.R.Crim.P., provides, in part:

(b) The court may not accept a plea of guilty without first, by addressing the defendant personally [except as provided in Rule 43(c)] in open court, informing the defendant of

and determining that the defendant understands the following:

(1) The nature of the charge to which the plea is offered;

(2) The mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered;

(3) That the defendant has the right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty;

(4) That if the defendant pleads guilty there will not be a further trial of any kind, so that by pleading guilty the defendant waives the right to a trial by jury or otherwise and the right to be confronted with adverse witnesses; and

(5) If the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding against the defendant and, if necessary, one will be appointed to represent the defendant, as provided in N.D.R.Crim.P. 44.

(c) The court shall not accept a plea of guilty without first, by addressing the defendant personally [except as provided in Rule 43(c)] in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty results from previous discussion between the prosecuting attorney and the defendant or the defendant's attorney.

"The purpose of the procedure outlined in Rule 11(b) is to ensure that the defendant is fully aware of the consequences of a guilty plea before he enters his plea." *State v. Boushee*, 459 N.W.2d 552, 555 (N.D.1990) (quoting *State v. Schumacher*, 452 N.W.2d 345, 346 (N.D.1990)).

## A

██ [¶ 26] Froistad asserts the district court should have conducted an inquiry under N.D.R.Crim.P. 11 at the time of his sentencing hearing before it accepted the plea agreement using Exhibit 3 as part of the factual basis. Exhibit 3 was a supplemental factual basis. Froistad mischaracterizes Exhibit 3 as a different plea agreement. It was not a different plea agreement. The district court had no duty to conduct a second Rule 11 inquiry at the sentencing hearing.

## B

██ [¶ 27] Froistad also argues he was influenced by the medications he was taking at the time he entered his guilty plea. Froistad asserts, in order to comply with N.D.R.Crim.P. 11, a court must inquire about the type of medications, the dosages, and the effect the medications might have on a defendant's faculties before the court accepts a plea. *United States v. Damon*, 191 F.3d 561, 565–66 (4th Cir.1999).

[¶ 28] *Damon* does not mandate that the specific medications and dosages be reviewed by the district court during a Rule 11 inquiry; rather, it states:

> [T]he court must broaden its inquiry to satisfy itself that the plea is being made knowingly and voluntarily. The district court erred when it failed to inquire about what effect, if any, [the defendant's] medication had on his ability to make a voluntary plea and to understand the consequences.

*Id.* at 565. The court remanded the case and suggested the district court would

want to "examine the medical records to determine the type, amount, and schedule of medication taken by [the defendant] before he entered his plea" in order to make a "retrospective examination of a defendant's state of mind when he entered his plea." *Id.* at 565–66. An inquiry into the specific nature of the medications a defendant was taking would be necessary in an attempt to re-create a defendant's state of mind. *Id.*

[¶ 29] In Froistad's case, the district court was not conducting a "retrospective examination." During his plea hearing, the district court asked Froistad about the medications he was taking.

> *The Court:* Are you presently under the influence of alcoholic beverages or any other drugs or chemicals whether or not prescribed by a physician?
>
> *Froistad:* Yes, Your Honor.
>
> *The Court:* And do those—well, let's break that apart. Are you presently under the influence of alcohol?
>
> *Froistad:* No.
>
> *The Court:* Are you presently under the influence of any drugs or chemicals other than those prescribed by a licensed physician?
>
> *Froistad:* No, Your Honor.
>
> *The Court:* Alright. And do the prescribed medications that you are apparently taking, and you need not mention them, do they interfere with your ability to make a good judgment today?
>
> *Froistad:* Not in any serious fashion, no.
>
> *The Court:* Well, not in any serious fashion, we need to know about that because I can't accept your plea if you are unable to think clearly today.
>
> *Froistad:* They're anti-depressants and anti-anxiety so they affect my mood but not my thinking faculties.

> *The Court:* You're able to think clearly and make a good judgment today about this proceeding and about other ordinary affairs of your life today?
>
> *Froistad:* Yes, Your Honor.

[¶ 30] During the plea hearing, the district court asked proper follow-up questions when Froistad answered he was taking prescribed medications. Froistad indicated he was able to think clearly. There is nothing in the record to indicate that Froistad was confused or unaware of what was taking place during the proceeding.

[¶ 31] The post-conviction court did not err in finding Froistad's plea was voluntary.

## VI

[¶ 32] On appeal, Froistad argues his right to be present was violated when a telephone conference, held after his plea hearing, took place without his participation. Rule 43, N.D.R.Crim.P., provides:

(a) The defendant must be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this Rule.

(b) The further progress of the trial, including the return of the verdict and the imposition of sentence may not be prevented and the defendant waives the right to be present if the defendant, initially present at trial, or having pleaded guilty,

   (1) is voluntarily absent after the trial has begun (whether or not the defendant has been informed by the court of the obligation to remain during the trial), or

   (2) is voluntarily absent at the imposition of sentence, or

(3) after being warned by the court that disruptive conduct will cause the removal of the defendant from the courtroom, persists in conduct that justifies the defendant's exclusion from the courtroom.

(c) A defendant need not be present

(1) when represented by counsel and the defendant is an organization, not an individual;

(2) when the offense is punishable by fine or by imprisonment for not more than one year or both, and the court, with the written consent of the defendant, permits arraignment, plea, trial, and imposition of sentence in the defendant's absence;

(3) when the proceeding involves only a conference or hearing upon a question of law; or

(4) when the proceeding involves a correction or reduction of sentence under Rule 35.

The North Dakota Constitution also addresses an accused party's right to be present at proceedings:

In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf; and to appear and defend in person and with counsel.

N.D. Const. art I, § 12.

[¶ 33] Froistad argues the telephone conference violated his rights because he would have "objected to the plea going forward, which would have resulted in this case going to trial" had he been present. Froistad characterizes the telephone conference as "binding him to a new plea agreement" and states he "did not give [his attorney] permission to change the terms of the plea agreement, [and] did not give him permission to enter into a second plea agreement."

[¶ 34] In a letter dated September 17, 1998, the district court stated its understanding of the telephone conversation:

This will confirm my telephone conference with Attorneys [for the State and for Froistad] concerning the factual basis to be submitted in support of the guilty plea. I understand that a written stipulation will be submitted at the hearing to supply the required factual basis. That will obviate the necessity of ruling on whether Plaintiff's Exh. 2, submitted at the plea hearing as the factual basis, may be kept confidential. Instead, Plaintiff's Exh. 2 will not be received into evidence and will not be made a part of the public record. However, I will retain that exhibit with the sealed PSI report in the event there is any later proceeding in this case.

The focus of the telephone conference was whether "Exhibit 2" should, or could, be kept confidential.

[¶ 35] The post-conviction court found the telephone conference between Froistad's lawyers, the State, and the district court was a pretrial conference and not a critical stage of the trial. The post-conviction court also found, even if the conference could be considered a critical stage of the trial, any error resulting from Froistad's absence was harmless. The post-conviction court's order provided:

This court agrees any conference between the court and attorneys in a criminal proceeding should include the defendant to avoid any appearance of impropriety, the court is not convinced a conference call wherein the court informs the parties of a ruling and how the court will proceed under that ruling is a critical phase of the trial under the circumstances involved in the present case.

[¶ 36] A defendant's presence is not required at a proceeding involving "only a conference or hearing upon a question of law." N.D.R.Crim.P. 43(c)(3). The post-conviction court did not err in finding Froistad's presence was not required at the telephone conference.

## VII

[¶ 37] A criminal defendant is entitled to the effective assistance of counsel. *Abdi v. State*, 2000 ND 64, ¶ 29, 608 N.W.2d 292. The Court has summarized the test for a claim of ineffective assistance of counsel in *Stoppleworth v. State*, 501 N.W.2d 325, 327 (N.D.1993).

When a defendant raises an ineffective-assistance-of-counsel argument, it is the defendant's burden to prove that counsel's assistance was ineffective at trial. In carrying that burden, the defendant must establish two elements. First, the defendant must prove that the counsel's performance was deficient. Second, the defendant must prove that the deficient performance prejudiced the defendant. In attempting to prove the first element, the defendant must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The second element requires the defendant to prove that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Id.* (citations and quotations omitted).

[¶ 38] Froistad gave ten examples of his counsel's alleged ineffective assistance. The post-conviction court set forth a detailed review of the ten examples and the evidence to support them.

First, Froistad claims his attorneys failed to properly investigate the case. Other than statements that he felt they did not do enough for what they were paid, no other evidence was provided by Froistad in regards to this allegation.

Second, Froistad claims his attorneys failed to request a change of venue. The case was settled as a plea agreement, and a change of venue would be appropriate only if proceeding to trial.

Third, Froistad claims his attorneys failed to secure a mental health professional to testify regarding his mental state at the time he made his confession. Testimony was received that a mental health professional did meet with Froistad, did not do a report, and has since passed away. Such a strategy may have been employed at a trial, yet there is no evidence overcoming the presumption that counsel's conduct fell outside the range of reasonable professional assistance. Froistad continues to argue his confession could have been attacked through mental competency examination. This court is not persuaded that Froistad's counsel did not look at this stratagem as a mental health professional did visit Froistad per counsels request.

Fourth, Froistad claims his attorneys improperly pressured him to plead to a crime he did not commit. This court received testimony that Froistad was told his case was unwinnable and the plea agreement was a good deal between federal and state charges pending. Froistad claims he did not commit the crime even though he pled guilty to that same crime. Froistad claims his attorneys' attitude towards the case changed when child pornography was found on his computer. Further, the state disclosed two witnesses who claimed Froistad's daughter was the victim depicted in the pornography. The complexion of the case obviously changed with the discovery of this material and a change of strategy due to this new evidence would be understandable and inevitable. This

court does not find Froistad's attorneys acted wrongly in pursuing a plea agreement.

Fifth, Froistad claims his attorneys informed him they would plan on losing if the case proceeded to trial. The only evidence of this is Froistad's testimony. This court discounts those statements as self-serving and with no other proof finds no basis for this allegation.

Sixth, Froistad claims his attorneys failed to withdraw his plea when he requested they do so. Again, the only evidence of this is Froistad's testimony and references to the same in the PSI and letter to the court. This court has found that Froistad did not affirmatively ask to withdraw his plea even though he had ample opportunity to do so before the trial judge.

Seventh, Froistad claims his counsel failed to withdraw when asked. Testimony is that he may have wanted different counsel and was informed he would have to affirmatively ask that his counsel be changed. No evidence was presented indicating he requested this of the court.

Eighth, Froistad claims his counsel negotiated a second plea agreement without his approval. A second agreement was not negotiated, only the factual basis was changed, and that complied with Froistad's wishes of protecting the victim, his daughter. Froistad signed all documents regarding the plea agreement and factual basis submitted to the court.

Ninth, Froistad claims his counsel failed to properly communicate with him. He has testified that for the money paid he did not have the access he desired of his attorneys. He does admit he was able to speak with local counsel and did speak with his California attorneys. Froistad's father testified he was able to communicate with Froistad's attorneys and was even given a home phone number to use. This court does not find evidence to show counsels' conduct in regards to communication fell below reasonable professional assistance.

Tenth, Froistad claims his attorneys failed to properly respond to the PSI. Froistad responded, himself, to the PSI intelligently. Attorneys can only rely on a defendant's information in responding to a PSI and Froistad did respond. This court does not find any irregularity in Froistad responding to the PSI.

[¶ 39] As the post-conviction court detailed, none of Froistad's assertions show his attorneys' performance was deficient. Froistad was not able to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" necessary to succeed with an ineffective assistance of counsel claim. *Stoppleworth v. State*, 501 N.W.2d 325, 327 (N.D.1993).

[¶ 40] The post-conviction court, nevertheless, proceeded to the second prong of the ineffective-assistance-of-counsel test and also concluded the proceeding would not have resulted in a different outcome because of the actions of Froistad's counsel.

[¶ 41] The post-conviction court did not err in finding Froistad did not suffer from ineffective assistance of counsel.

## VIII

[¶ 42] The district court's order denying Froistad's post-conviction relief is affirmed.

[¶ 43] VANDEWALLE, C.J., NEUMANN, MARING, JJ., and BRUCE E. BOHLMAN, District Judge, concur.

[¶ 44] BRUCE E. BOHLMAN, District Judge, sitting in place of KAPSNER, J., disqualified.