In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2838

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUAN CABADA ARENAL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05 CR 318—**Rudolph T. Randa**, *Chief Judge.*

ARGUED APRIL 11, 2007—DECIDED SEPTEMBER 5, 2007

Before CUDAHY, KANNE, and WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* Juan Cabada Arenal pled guilty
to conspiring to distribute 100 grams or more of a mixture
containing heroin and cocaine. His sentence was 300
months' imprisonment, eight years' supervised release, a
$100 special assessment, and $400 in restitution. On
appeal, Arenal argues that the plea agreement and the
information before the court were not sufficient to estab-
lish the factual basis for his guilty plea. He also argues
that the evidence does not support the quantity of drugs
that guided the district court's sentence. For the rea-
sons set forth below, we affirm.

## I. HISTORY

Arenal, an immigrant from Cuba, is no stranger to the federal drug laws, having been previously convicted of drug trafficking crimes three times since his admission to this country. Arenal was on supervised release when his co-conspirators turned against him by cooperating with law enforcement officers. He was arrested yet again. The informants fingered Arenal as a high-volume drug dealer. Evidence gathered in the investigation supported this claim.

On December 20, 2005, Arenal was indicted on two counts: (1) conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846, and (2) possession of a mixture of cocaine and heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). On March 7, 2006, a grand jury returned a superseding indictment against Arenal and others, adding additional counts and additional defendants. The quantity of drugs charged under Count 1 was larger in the superseding indictment (500 grams) than it was in the original indictment (100 grams). Arenal entered into a plea agreement with the government and on March 14, 2006 he pled guilty to Count 1 of the original indictment.

Arenal's plea agreement included details of a drug transaction, initiated by a confidential informant, which had led to Arenal's arrest. It also included details from ten days of surveillance on an apartment building where Arenal was observed conducting drug transactions. The apartment, which he apparently shared with his girlfriend, contained heroin trafficking paraphernalia when it was searched after his arrest. In the written plea agreement, Arenal agreed that the facts laid out in the agreement constituted an adequate factual basis for his plea of guilty to conspiracy to distribute heroin. On March 14, 2006, Arenal entered his guilty plea. The court asked him if the

facts outlined on pages two through four of his plea agreement "provide a factual basis for this plea." Arenal replied, "yes." His attorney replied, "yes, sir." The government agreed.

In anticipation of sentencing on the guilty plea, a presentence investigation report (PSR) was prepared. The PSR contained a far more extensive record of Arenal's involvement in drug trafficking. It included information about out-of-town trips to acquire drugs. It included details of a ring of traffickers that included Arenal's girlfriend and the defendants who were eventually added as Arenal's co-defendants in the superseding indictment. It included names of various customers of Arenal.

Arenal now argues that the district court did not adequately ensure the existence of a factual basis for his guilty plea. He argues that the only information affirmatively adopted by the district court at the plea hearing was the plea agreement, and that the information contained in the PSR was never affirmatively adopted as the factual basis of the guilty plea by the district court. He asserts that the plea agreement alone does not contain enough information to establish the conspiracy charge. He urges us to reverse the judgment of the district court because the court violated FED. R. CRIM. P. 11(b)(3).

In a similar argument, he also challenges the quantity of drugs that the district court accepted in determining his offense level at sentencing. Based on the facts in the plea agreement, which contained information about the one failed drug transaction that led to Arenal's arrest, Arenal argues that the total amount of drugs is less than 100 grams. The government counters that Arenal agreed in his plea agreement that the government had sufficient evidence to support a conviction for more than 100 grams, and that the PSR contains additional evidence of drug quantities far in excess of 100 grams.

## II. ANALYSIS

### A. Factual Basis for the Guilty Plea

The government concedes that the plea agreement itself contains a less than satisfactory recitation of all the relevant facts. But the government urges us to consider not just the information contained in the plea agreement and colloquy, but also in the rest of the record before the district court prior to its entry of judgment, including the PSR. Because Arenal did not object to the factual basis in the district court (and in fact affirmatively endorsed the record as being adequate to support the factual basis), our review is for plain error only. *United States v. Vonn*, 535 U.S. 55, 59 (2002); *United States v. Driver*, 242 F.3d 767, 769 (7th Cir. 2001). In order to prevail, Arenal must show that an error occurred, that it was plain, and that the error affected the "fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985); *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

The plain error standard is a high hurdle for Arenal to overcome. *See United States v. Villarreal-Tamayo*, 467 F.3d 630, 633 (7th Cir. 2006). One purpose of setting the plain error standard so high is to promote the efficiency of the district court proceedings. *See Driver*, 242 F.3d at 770. When launching a plain error challenge to the validity of a Rule 11 guilty plea, "[a] defendant must . . . satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (internal quotations omitted). The appellant "must show a reasonable probability that, but for the error, he would not have entered the plea." *Id.*

Arenal urges us to distinguish *Dominguez Benitez* as only applying to those cases where a defendant challenges the adequacy of the Rule 11(b)(1) colloquy and not to a challenge of the Rule 11(b)(3) factual basis. Appellant's Reply Br. at 4. We decline to do so. The Supreme Court was clear that it granted certiorari in *Dominguez Benitez* for the question of whether "in order to show that a violation of [Rule] 11 constitutes reversible plain error, a defendant must demonstrate that he would not have pleaded guilty if the violation had not occurred." 542 U.S. at 80. It answered that very broad question in the affirmative. *Id.* at 83. At no point in its analysis did the Court make the distinction (urged on us by Arenal) between technical or procedural errors in the colloquy and errors in the factual basis. *Id.* at 80-83. We find nothing in *Dominguez Benitez* to suggest that its holding is more limited than the opinion on its face purports to be: that any plain error appeal of a purported violation of Rule 11 must show prejudice by proving that the defendant would not have pled guilty but for the error.

In *United States v. Darling*, we held that the district court must at least allude to what sources it has used to find the factual basis for the plea agreement. 766 F.2d 1095, 1100 (7th Cir. 1985). But we also clarified that the purpose of requiring the source of the factual basis to be "specifically articulated on the record" was to ensure that the record was complete for post-conviction review. *Id.* Arenal correctly points out that the district court did not verbally accept or make any additional findings of fact based on the information in the PSR available at sentencing. The record does show that the accuracy of the facts contained in the PSR was of paramount concern to the district court. In fact, when Arenal indicated at his June 14, 2006 sentencing hearing that his objections to some content in the PSR had not been adequately addressed, the district court continued the

proceedings until June 22 so that those disputed issues could be resolved. Then, on June 22, 2006, the district judge accepted the contents of the PSR and checked the box at line 1(A) which reads: "The court adopts the presentence investigation report without change."

The question rightfully before us is not whether the plea agreement itself contained adequate information to establish the factual basis for the plea. Rule 11 draws a distinction between the district court's role in *accepting* a guilty plea and its role in *entering judgment* on the guilty plea. *Compare* FED. R. CRIM. P. 11(b)(1) (governing the plea colloquy before a court accepts a guilty plea) *with* FED. R. CRIM. P. 11(b)(3) (requiring that the factual basis be established to the satisfaction of the district court before entering judgment on the plea). We have previously acknowledged this distinction, holding that the district court may consider not only the information proffered at the plea hearing, but also information contained in the PSR to establish a factual basis before entry of judgment and imposition of sentence. *Howard v. United States*, 135 F.3d 506, 509 (7th Cir. 1998) ("[T]his structure indicates that the district court is entitled to take into account not only the government's proffer at the plea hearing, but also information in the presentence report, when it makes its final determination before entry of judgment that there is an adequate factual basis for a guilty plea."). As we held in *Howard*, this structural reading of Rule 11 is consistent with the guidance of the Advisory Committee's Notes to the 1966 amendment to the rule (which introduced the language requiring a factual basis) that: "The Court should satisfy itself, by inquiry of the defendant or the attorney for the government, or by examining the presentence report, or otherwise, that the conduct which the defendant admits constitutes the offense charged in the indictment or

information or an offense included therein to which the defendant has pleaded guilty."

We note that the PSR contains well over six pages of details that support the factual basis of a guilty plea to a charge of conspiracy to distribute large amounts of cocaine and heroin. Arenal argues that we must confine our review to the plea agreement and not consider the PSR because the district court did not rely on the PSR for the factual basis. But this argument misunderstands our role as an appellate court. As the Supreme Court has held in the context of appellate review of plea agreements, "[t]he Advisory Committee intended the effect of error to be assessed on an existing record, no question, but it did not mean to limit that record strictly to the plea proceedings." *Vonn*, 535 U.S. at 74.

Between the information in the PSR and the plea agreement, the district court had sufficient information before it prior to the entry of judgment to support the rule's requirement that the district court "satisfy itself . . . that the conduct which the defendant admits constitutes the offense charged." Certainly the purposes of Rule 11 would have been better served if the written plea agreement had been more explicit about the conspiracy underlying Arenal's heroin and cocaine distribution ring. They would also have been better served if the district court had explicitly stated that it was adopting the facts of the PSR as a supplement to its earlier factual basis for the guilty plea. But even if we were to consider either of those deficiencies to be errors, the fact that Arenal is here on plain error review dooms his argument.

"[T]he defendant who sat silent at trial has the burden to show that his 'substantial rights' were affected." *Vonn*, 535 U.S. at 62-63 (citing *Olano*, 507 U.S. at 736). Arenal effectively sat silent before a district judge who had at his fingertips a mountain of evidence to support the

guilty plea. If Arenal had objected or withdrawn his plea while he was still before the district court, the judge would have been alerted to the alleged defect in the plea agreement and would have had the opportunity to correct those alleged defects, thus avoiding the delay associated with the appeal process. *See id.* The court could have quickly dispelled any uncertainty (if there was any) about Arenal's understanding and position. *See id.* When the judge checked the box that he adopted the PSR without change, he could have also explicitly adopted the facts of the PSR as a supplement to the plea agreement. But Arenal did not make his objection at that time, waiting instead until his appeal to make that argument. It is precisely this type of sandbagging that the heightened standard of plain error review is well-served to prevent. *See, e.g.*, *United States v. Hernandez-Martinez*, 485 F.3d 270, 272 (5th Cir. 2007); *In Re Sealed Case*, 356 F.3d 313, 319 (D.C. Cir. 2004).

Arenal does not assert that he is actually innocent. Nor does he argue that his guilty plea was secured only through a deficient statement of the facts of his case in the plea agreement. He does not claim that he was ignorant of some fact omitted from the plea agreement, or that, but for this error, he would not have entered his guilty plea. Nor does he challenge that the facts contained in the PSR (and accepted by the district judge at the time of entry of judgment) are sufficient to establish the elements of the conspiracy count. In short, he gives us nothing to support a finding of plain error unless we were to disregard the standard set out in *Dominguez Benitez*. This we are unwilling to do.

## B.  Sentencing

We now turn to Arenal's argument that there was an insufficient factual foundation for the district court's

sentence. The district court found that Arenal was a career offender as defined by § 4B1.1(a) of the Guidelines. As a career offender, his offense level was increased to 37 and his criminal history category was automatically VI. U.S.S.G. § 4B1.1(b). The district judge adjusted the offense level downward for acceptance of responsibility under Guidelines §§ 3E1.1(a) and 3E1.1(b). The district judge then sentenced Arenal to 300 months' imprisonment, within the advisory Guidelines range of 262 to 327 months.

As with his factual basis argument, Arenal focuses on the text of the plea agreement and the quantity of drugs involved in the single failed drug deal that led to his arrest. The quantity of heroin specifically mentioned in the plea agreement only adds up to 56.7 grams. He argues that a quantity of heroin less than 100 grams would place his career offender offense level at 34, which would then be adjusted down to 31 for accepting responsibility. The advisory range would then be 188 to 235 months' imprisonment.

This argument ignores the fact that Arenal specifically admitted in his plea agreement that the government could prove beyond a reasonable doubt that Arenal trafficked in 100 grams or more of heroin. He specifically pled guilty to conspiracy to distribute more than 100 grams. In addition to entering a guilty plea for more than 100 grams, the PSR adopted by the district court also set forth additional evidence to support a quantity of drugs far in excess of 100 grams. Arenal affirmatively stated that he understood that the offense involved at least 100 grams of heroin and he specifically pled guilty to that crime.

Although any error here would be analyzed under plain error standards, there is no sentencing error to consider. The district court entered judgment on a valid

guilty plea, supported not only by the affirmative admissions of the defendant under oath and in a signed plea agreement, but also supported by the facts set forth in the PSR. The district court correctly applied the career offender provisions of Guidelines §§ 4B1.1(a) and 4B1.1(b), then properly calculated the advisory guidelines range and sentenced Arenal within that range.

### III. CONCLUSION

For the foregoing reasons, the judgment and sentence are AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*