**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued October 2, 2007
Decided April 8, 2008

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

Nos. 06-3633, 06-3726 & 06-3851

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee,* <br><br> *v.* <br><br> JAMIE L. BRIESEMEISTER, et al., <br> *Defendants-Appellants.* | Appeals from the United States District Court for the Western District of Wisconsin. <br><br> No. 06 CR 08 <br><br> Barbara B. Crabb, <br> *Chief Judge*. |

**O R D E R**

Michele Nelson and her husband, Timothy Nelson, were arrested after selling methamphetamine to a confidential informant.  They were interviewed by police and fingered Reann Taylor and Jamie Briesemeister as middlemen in their local business.  The government charged the Nelsons with distributing methamphetamine, 21 U.S.C. § 841(a)(1), and them along with Taylor and Briesemeister with conspiring to distribute the drug, *see id.* §§ 846, 841(a)(1).  Michele Nelson, Taylor, and Briesemeister pleaded guilty to the conspiracy charge, and the government dismissed the distribution charge against Michele. (Timothy Nelson's case was transferred to the District of Minnesota for undisclosed medical reasons.)  Taylor appeals her sentence, while appointed counsel for Nelson and Briesemeister move to withdraw under *Anders v. California*, 386 U.S. 738 (1967).  For the

following reasons, we affirm Taylor's sentence.  We also grant the motions to withdraw and dismiss Nelson's and Briesemeister's appeals.

## I. Background

The Nelsons sold drugs from their home in Hudson, Wisconsin.  They started with marijuana and "crank"—an impure form of methamphetamine—but in September 2001 they lost most of their marijuana supply.  After that they concentrated on selling crank along with a purer form of methamphetamine known as "glass."  The Nelsons kept their stash in their bedroom, and their customers reported seeing guns in that room, in the living room, and in an outdoor shed.

Taylor, a friend and customer, started running drugs for the Nelsons in early 2003.  She had known the Nelsons for years before joining the conspiracy, and she considered them family.  She and her two children had moved in with the Nelsons in late 2002, and a few months later the Nelsons bought her a trailer in nearby River Falls, Wisconsin.  Soon after she moved into the trailer, Taylor began selling glass for the Nelsons primarily to young people in River Falls.  Taylor continued selling glass from the trailer park until she was evicted in late 2004.  She then moved her trailer onto the Nelsons' property and continued dealing from there.

Briesemeister started selling methamphetamine in the fall of 2003.  She initially dealt glass for Taylor, who was her neighbor in their River Falls trailer park.  But soon she earned the trust of Michele Nelson and began selling for the Nelsons directly.  And when Taylor's drug habit interfered with business, Briesemeister "took over" some of the customers Taylor had been serving.

The conspiracy ended in December 2004 when a confidential informant bought less than a gram of methamphetamine from the Nelsons.  Following their arrests, Michele and Timothy volunteered the names of drug associates and promised to continue to cooperate.  They later reneged on that promise.

## II. Analysis

### A.     Reann Taylor

Following Taylor's guilty plea, the probation officer concluded that she was responsible for at least 1.5 kilograms of methamphetamine.  The district judge overruled Taylor's objection to that drug-quantity calculation, noting that she had admitted seeing two pounds of glass in the Nelsons' bedroom and had distributed multiple-ounce quantities

of the drug for them over the course of 18 months. That calculation earned Taylor a base offense level of 34, *see* U.S.S.G. § 2D.1.1(c)(3), which the district court increased by two levels after attributing the guns in the Nelsons' home to Taylor, *see id.* § 2D1.1(b)(1), but then reduced by three levels because she accepted responsibility for the crime, *see id.* § 3E1.1. The resulting total offense level of 33 coupled with Taylor's criminal history category of III yielded a guidelines imprisonment range of 168 to 210 months. *See id.* Ch. 5, Pt. A. The court sentenced Taylor to 180 months' imprisonment and five years' supervised release.

Taylor first challenges the district court's conclusion that she was responsible for between 1.5 and 5 kilograms of methamphetamine. She argues that the district court should not have added to her drug quantity the two pounds of methamphetamine she saw in the Nelsons' home at an unspecified time, and that the court failed to explain its finding that she had distributed multiple-ounce quantities of methamphetamine for a period of about 18 months. We review the court's drug-quantity calculation for clear error. *United States v. Wilson*, 481 F.3d 475, 483 (7th Cir. 2007).

The government had to prove the applicable drug quantity by a preponderance of the evidence. *See United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007). Any amount from 1.5 to 5 kilograms of methamphetamine would have yielded the same base offense level. *See* U.S.S.G. § 2D1.1(c)(3). Taylor was accountable not only for what she sold personally but also for the reasonably foreseeable amounts sold by her coconspirators as part of the jointly undertaken activity, *id.* § 1B1.3(a)(1)(B); *Wilson*, 481 F.3d at 483. And although a sentencing court may not speculate about the quantity of drugs for which a defendant is responsible, the guidelines do permit the court to make a reasonable estimate. *United States v. Hollins*, 498 F.3d 622, 631 (7th Cir. 2007). In making that estimate, however, the court cannot include coconspirators' conduct that occurred before the defendant joined the conspiracy—even if the defendant knew about the conduct. *See* U.S.S.G. § 1B1.3, cmt. n.2; *United States v. Zaccagnino*, 467 F.3d 1044, 1047 (7th Cir. 2006). That is what the district court did here, says Taylor, when it added in the two pounds of glass she saw in the Nelsons' house.

We do not agree. Although Taylor never said precisely *when* she observed the glass, the district court reasonably concluded that the date was after Taylor had joined and endorsed the full scope of the Nelsons' conspiracy. Taylor had lived with the Nelsons for only a short time before she started dealing for them, and the district court reasonably concluded that she saw the two pounds (roughly 907 grams) at some point during the 18 months she was involved in the conspiracy. Moreover, nothing in this record suggests that Taylor limited her involvement in the conspiracy; she stood ready and willing to sell—or at least try to sell—whatever amount of methamphetamine the Nelsons could supply, so the two pounds she saw after joining the conspiracy was properly attributed to her. *See Hollins*, 498 F.3d at 630-31.

Even without the two pounds, though, the 1.5-kilogram quantity was satisfied because the district court reasonably relied on the probation officer's conclusion that Taylor had sold multiple-ounce quantities for approximately 18 months. Taylor says there is no evidence to support that conclusion, but her presentence report recounts Michele Nelson's statement that Taylor "went through between an ounce and a quarter pound of 'glass' each week," and we know that Taylor was involved for 18 months. According to that estimate, if Taylor sold just one ounce (28.35 grams) per week, her relevant conduct would exceed 1.5 kilograms (28.35 grams x 78 weeks = 2.2 kilograms). So given Nelson's information, which Taylor never contested in the district court, the finding that Taylor was responsible for at least 1.5 kilograms of methamphetamine is not clearly erroneous. *See Hollins*, 498 F.3d at 631.

Taylor next argues that the district court erred in assessing a two-level upward adjustment for possessing guns in relation to the drug-trafficking activity. *See* U.S.S.G. § 2D1.1(b)(1). Because most of the customers related that they had seen guns in the Nelsons' home, often near their drug supply, the district court concluded that it was not clearly improbable that the guns were connected to the conspiracy's drug trafficking activity and that they were reasonably foreseeable to Taylor. Taylor did not object to the increase, nor does she dispute that the Nelsons kept guns to further the conspiracy. But she now asserts that the government adduced no evidence that she knew about the guns or that they were reasonably foreseeable to her.

The sentencing court did not plainly err in determining that the guns were reasonably foreseeable to Taylor. *See United States v. Luster*, 480 F.3d 551, 558 (7th Cir. 2007); U.S.S.G. §§ 1B1.3(a)(1)(B) & 2D1.1(b)(1). Numerous customers reported seeing shotguns, rifles, pistols, and a revolver in the Nelsons' bedroom, living room, and yard. They also reported seeing Taylor in the Nelsons' home. Given the frequency of Taylor's visits to the Nelsons' home and the Nelsons' open possession of the guns, the district court did not err in concluding that the guns were reasonably foreseeable to Taylor.

Finally, Taylor argues that her 180-month prison term is unreasonable. Her first contention—that we should stop presuming that a sentence with the guidelines range is reasonable—is a nonstarter now that *Rita v. United States*, 127 S. Ct. 2456 (2007), has upheld that appellate presumption. And Taylor's general challenge to the reasonableness of her sentence also is unavailing. She contends that the district judge did not meaningfully address mitigating factors, including her substance-abuse problem, a troubled childhood that led her to run away at age 12 and have two children by age 16, and the physical and emotional abuse she suffered at the hands of her children's father. But in fact the district court did consider Taylor's history and characteristics, including everything she mentions

here. *See* 18 U.S.C. § 3553(a)(1). The court also considered the nature and circumstances of the offense, *see id.*, particularly Taylor's sales of drugs to young people, and the fact that her substance abuse made her a likely candidate for recidivism, *see id.* § 3553(a)(2). The judge concluded that a 180-month term would hold Taylor accountable for her conduct, *see id.* § 3553(a)(2)(A), protect the community, *see id.* § 3553(a)(2)(C), allow her to participate in substance-abuse treatment and vocational training, *see id.* § 3553(a)(2)(D), and achieve parity with similarly situated offenders, *see id.* § 3553(a)(6). Given this adequate statement of reasons, *see Rita*, 127 S. Ct. at 2468, we will not reweigh the sentencing factors.

## B. Michele Nelson

Counsel's *Anders* brief is facially adequate, and Nelson has not responded to counsel's motion to withdraw. *See* Cir. R. 51(b). We limit our discussion to the two potential issues identified in counsel's brief. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

Counsel first considers whether Nelson could challenge the district court's drug-quantity calculation on the ground that it was based in part on her self-incriminating statements to police. At sentencing her attorney argued that the probation officer's reliance on those statements contravened U.S.S.G. § 1B1.8. The government responded that § 1B1.8 is inapplicable because it protects only the statements a defendant makes after entering into a plea agreement. Without specifically ruling on the objection, the district court determined that, based on Nelson's "unprotected statements" and her drug associates' corroborating statements, she was responsible for more than 5 kilograms but less than 15 kilograms of methamphetamine.

Section 1B1.8 applies only if a defendant enters into a cooperation agreement in which the government promises that self-incriminating information will not be used against the defendant. U.S.S.G. § 1B1.8(b)(1); *United States v. Clemons*, 349 F.3d 1007, 1008 (7th Cir. 2003); *United States v. Rutledge*, 900 F.2d 1127, 1131 (7th Cir. 1990). But on this record Nelson was never promised that her statements to investigators prior to entering her plea agreement would not be used against her. And the probation officer did not obtain—let alone rely on—any statement Nelson made after she entered into the plea agreement. Thus, counsel rightly concludes that challenging Nelson's sentence on this ground would be frivolous.

Counsel next considers whether Nelson could challenge the reasonableness of her 262-month sentence. Counsel notes that the district court properly calculated Nelson's advisory guidelines range: with a base offense level of 36, *see* U.S.S.G. § 2D1.1(c)(2), increased by two levels because she possessed guns in furtherance of the conspiracy, *see id.*

§ 2D1.1(b)(1), and reduced by three levels because she accepted responsibility, *see id.* § 3E1.1, Nelson's total offense level was 35.  With a criminal history category of V, her advisory guidelines imprisonment range was 262 to 327 months.  *See id.* Ch. 5, Pt. A.  The court sentenced Nelson to 262 months' imprisonment and five years' supervised release.  The district judge explained that she chose a sentence at the bottom of the guidelines range to hold Nelson accountable for her serious criminal conduct, *see* 18 U.S.C. § 3553(a)(2)(A), to protect the community, *see id.* § 3553(a)(2)(C), and to provide Nelson with the opportunity to participate in substance-abuse treatment and mental health counseling, *see id.* § 3553(a)(2)(D).  The court's explanation is adequate, *see Rita*, 127 S. Ct. at 2468, and counsel cannot identify an argument for a lower sentence.  Thus, we agree that it would be frivolous to challenge Nelson's sentence on this ground.

### C.      Jamie Briesemeister

Counsel's *Anders* brief is facially adequate, and Briesemeister has not responded to counsel's motion to withdraw.  *See* Cir. R. 51(b).  Review is limited to the potential issues identified in counsel's brief.  *See Schuh*, 289 F.3d at 973-74.

Briesemeister has informed counsel that she wants her guilty plea vacated.  Thus, counsel first considers whether Briesemeister could challenge the adequacy of the plea colloquy conducted under Federal Rule of Criminal Procedure 11, in particular the requirement in Rule 11(b)(3) that the district court satisfy itself that there is a factual basis for the guilty plea.  Because Briesemeister did not seek to withdraw her plea in the district court, we would review only for plain error.  *United States v. Arenal*, 500 F.3d 634, 637 (7th Cir. 2007).

Counsel suggests that during the Rule 11 colloquy the district court failed to inform Briesemeister of her right to confront the witnesses against her, and that she was waiving her trial rights by pleading guilty.  But counsel concludes that it would be frivolous for Briesemeister to challenge the voluntariness of her plea on the basis of these purported omissions because her plea agreement includes both advisements, rendering any error harmless.  This is correct, but in any event counsel's assessment of the record is incomplete.  In addition, the district court specifically informed Briesemeister that by pleading guilty she was giving up her trial rights, including her right to cross-examine the witnesses against her.

As for the requirement of a factual basis, counsel considers whether Briesemeister could argue that the government's proffer at her plea hearing showed only a buyer-seller

arrangement, and not a conspiracy. But the proffer included evidence that for more than a year Briesemeister acted as a "salesperson" for Michele Nelson. And, as counsel notes, we could consider the presentence report, *see Arenal*, 500 F.3d at 638, which includes Michele Nelson's statement that Briesemeister "middled" drugs for her, customers' statements that they were aware that Nelson supplied the drugs they bought from Briesemeister, Taylor's statement that Briesemeister built a relationship with Michele Nelson that allowed her to bypass Taylor as a "middleman," and Briesemeister's admission that she "took over" some of Taylor's customers when Taylor's drug habit prevented her from doing business. Those facts are more than sufficient to show a "prolonged and actively pursued course of sales coupled with the seller's actual knowledge and a shared stake in the buyer's illegal venture." *United States v. Hach*, 162 F.3d 937, 943 (7th Cir. 1998).

Counsel next considers whether Briesemeister could challenge the district court's adoption of the probation officer's drug-quantity calculation. Briesemeister initially disputed its accuracy, but explicitly withdrew her objection after concluding that it would not affect her guidelines' range. Because Briesemeister waived this argument, counsel correctly concludes that it would be frivolous to pursue it. *See United States v. Sensmeier*, 361 F.3d 982, 986 (7th Cir. 2004); *United States v. Cunningham*, 405 F.3d 497, 502 (7th Cir. 2005).

Counsel also briefly considers and rejects a potential argument that Briesemeister could qualify for safety-valve treatment. *See* 18 U.S.C. § 3553(f). But counsel correctly concludes that such a contention would be frivolous because Briesemeister has two criminal history points. *See id.* § 3553(f)(1).

Finally, counsel considers mounting a challenge to the reasonableness of Briesemeister's sentence based on her "very sympathetic background." The district court sentenced Briesemeister to 121 months' imprisonment—a month longer than the mandatory minimum, *see* 21 U.S.C. § 841(b)(1)(A)—along with five years' supervised release. Counsel notes that the district court properly calculated her guidelines range: with a base offense level of 34, *see* U.S.S.G. § 2D1.1(c)(3), less three points for acceptance of responsibility, *see id.* § 3E1.1, Briesemeister's adjusted offense level was 31. With a criminal history category of II, her guidelines imprisonment range was 121 to 151 months. *See id.* Ch. 5, Pt. A. In selecting a sentence at the bottom of that range, the district court considered Briesemeister's background, *see* 18 U.S.C. § 3553(a)(1), the need to hold her accountable for her serious criminal conduct, *see id.* § 3553(a)(2)(A), and the importance of substance-abuse treatment in her rehabilitation, *see id.* § 3553(a)(2)(D). Given the court's adequate explanation of the sentence, we agree that it would be frivolous for Briesemeister to challenge it on this ground. *See Rita*, 127 S. Ct. at 2468.

Accordingly, we AFFIRM Taylor's sentence, GRANT the *Anders* motions, and DISMISS Nelson's and Briesemeister's appeals.